ZACHARIAH TOMLIN, State Bar No. 263563
ztomlin@walsworthlaw.com
SONIYA KHEMLANI, State Bar No. 266224
skhemlani@walsworthlaw.com
WALSWORTH LLP
19900 MacArthur Blvd., Suite 1150
Irvine, California 92612-2445
Telephone: (714) 634-2522
Facsimile: (714) 634-0686

Attorneys for Defendants Stella Management, Inc.; Stella Management, Inc.; Stella Management, LLC [Erroneously Named]; Daniel Horton; Deanna Horton; and Edee, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| POLINFT MEDIA, a Wyoming Corporation, ,<br><br>Plaintiff,<br><br>v.<br><br>STELLA MANAGEMENT, INC. a Michigan Corporation; STELLA MANAGEMENT, INC. an Arizona Corporation; STELLA MANAGEMENT, LLC (state of incorporation presently unknown); DANIEL HORTON, an individual; DEANNA HORTON, an individual; EDEE, INC., an Arizona Corporation; and DOES 1-20, inclusive, ,<br><br>Defendants. | Case No. 26-CV-00738<br><br>[*Orange County Superior Court Case No. 30-2025-01533588-CU-BC-CJC*]<br><br>**NOTICE OF REMOVAL-DIVERSITY JURISDICTION**<br><br>**(28 U.S.C. §§ 1441, 1446)** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants Stella Management, Inc.; Stella Management, Inc.; Stella Management, LLC [Erroneously Named]; Daniel Horton; Deanna Horton, and Edee, Inc. constituting all of the named defendants in the Orange

County Superior Court Action, Case No. 30-2025-01533588-CU-BC-CJC ("State Court Action"), hereby jointly remove this action from the Superior Court of the State of California for the County or Orange to the United States District Court for the Central District of California. This removal is based on Diversity Jurisdiction, pursuant to 28 U.S.C. § 1441.

## STATEMENT OF BASIS FOR REMOVAL

1. The State Court Action was commenced by Plaintiff PoliNFT Media on December 16, 2026, by the filing of a complaint in the Superior Court of California, County of Orange.

2. This Notice of Removal has been timely filed pursuant to 28 U.S.C. 1446(b), as, Defendants received notice of this action when a copy of the summons and complaint were forwarded to Daniel Horton and Deanna Horton, who are the respective principals of the corporate defendants, on or about December 29, 2025, a date less than 30 days prior to the date of filing of this notice of removal. No Defendant has been properly or personally served, nor the agent for service of process for any of the corporations named been served.

3. Copies of the Summons, and Complaint, constituting all process and papers the Defendants are presently in possession of are attached hereto as Exhibit A.

## DIVERSITY OF CITIZENSHIP

4. The parties to this action are diverse in their state citizenship such that this District Court has original jurisdiction pursuant to 28 U.S.C. §1332.

5. Specifically, Plaintiff PoliNFT Media is and at all times relevant is a corporation, duly incorporated in the State of Wyoming, with its principal place of business in the State of Wyoming.

6. Defendant Stella Management, Inc. is and at all times relevant is a corporation, duly incorporated in the State of Michigan, with its principal place of business in the State of Arizona.

/ / /

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

7. Defendant Stella Management, Inc. is and at all times relevant is a corporation, duly incorporated in the State of Arizona, with its principal place of business in the State of Arizona.

8. Defendant Stella Management, LLC is not an entity registered with any state, and was erroneously sued due to a drafting error in an operative agreement, which erroneously identified Stella Management, Inc. as Stella Management, LLC. As set forth above, Stella Management, Inc. has its principal place of business in Arizona.

9. Defendant Edee, Inc. is and at all times relevant is a corporation, duly incorporated in the State of Arizona, with its principal place of business in the State of Arizona.

10. Defendant Daniel Horton, is an individual who is and at all times relevant was a citizen of the State of Arizona.

11. Defendant Deanna Horton, is an individual who is and at all times relevant was a citizen of the State of Arizona.

## AMOUNT IN CONTROVERSY

12. As more fully set forth in the Complaint filed in the State Court Action, and attached hereto as Exhibit A, Plaintiff PoliNFT Media seeks and alleges damages in excess of $75,000.00, exclusive of alleged interests, costs, and fees.

## JURISDICTION AND NOTICE OF REMOVAL

13. This District Court therefore has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because: 1.) The parties are perfectly diverse, with no defendant being a citizen of the state of the Plaintiff's citizenship; 2.) The amount in controversy exceeds the jurisdictional minimum of $75,000.00; and 3.) The defendants are not citizens of the State of California, wherein this action is pending, such that removal of the State Court Action is proper under 28 U.S.C. § 1441(a).

14. All defendants in the State Court Action are jointly seeking removal by this notice.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

15. On the date set forth below, a copy of this notice is being served upon Plaintiff's attorney. Further, on the same date, a copy of this notice is being filed with the clerk of the Superior Court of California, County of Orange.

Respectfully Submitted.

Dated: January 23, 2026

WALSWORTH LLP

By: */s/Zachariah R. Tomlin*

ZACHARIAH TOMLIN
SONIYA KHEMLANI
Attorneys for Defendants Stella Management, Inc.; Stella Management, LLC [Erroneously Named]; Daniel Horton; Deanna Horton; and Edee, Inc.

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 12/16/2025 09:07:40 AM
30-2025-01533588-CU-BC-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

KEVIN D. GAMARNIK (273445)
kgamarnik@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Telephone: (714) 556-1700
Facsimile: (714) 546-5005

Attorneys for Plaintiff PoliNFT

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

POLINFT MEDIA, a Wyoming Corporation,

*Plaintiff*,

vs.

STELLA MANAGEMENT, INC., a Michigan corporation;
STELLA MANAGEMENT, INC., an Arizona corporation;
STELLA MANAGEMENT, LLC (state of incorporation presently unknown);
DANIEL HORTON, an individual;
DEANNA HORTON, an individual;
EDEE, INC., an Arizona corporation;
and DOES 1-20, inclusive,

*Defendants*.

Case No.

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **BREACH OF FIDUCIARY DUTY**
3. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
4. **FRAUD**
5. **VIOLATION OF PENAL CODE § 496**
6. **MISAPPROPRIATION OF TRADE SECRETS**
7. **CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS**
8. **AIDING AND ABETTING MISAPPROPRIATION OF TRADE SECRETS**
9. **CONVERSION**
10. **COMMON COUNT: MONEY HAD AND RECEIVED**

**JURY TRIAL DEMANDED**

Plaintiff PoliNFT Media, Inc. complains and alleges against Stella Management, Inc., Stella Management, Inc., Stella Management LLC, Daniel Horton, Deanna Horton, Edee, Inc., and Does 1-20 as follows:

**THE PARTIES**

1. Defendant Stella Management LLC ("Stella LLC") is an entity whose state of incorporation is currently unknown to Plaintiff. Plaintiff will amend the Complaint when Stella LLC's state of incorporation is verified. Plaintiff is informed and believes that Stella LLC's principal place of business is in Tucson, Arizona.

2. Plaintiff is informed and believes that Defendant Stella Management, Inc. is a Michigan corporation, with its principal place of business in Tucson, Arizona.

3. Plaintiff is informed and believes that Defendant Stella Management, Inc. is an Arizona corporation, with its principal place of business in Tucson, Arizona. For clarity, there appear to be two separate entities named "Stella Management, Inc." and who appear to have as their agents Deanna and Daniel Horton. Plaintiff will collectively refer to these two entities as "Stella Inc."

4. Defendant Daniel Horton ("Daniel") is an individual. Plaintiff is informed and believes that Mr. Horton resides in California.

5. Defendant Deanna Horton ("Deanna") is an individual. Plaintiff is informed and believes that Ms. Horton resides in California.

6. Defendant Edee, Inc. ("Edee") is an Arizona corporation with its principal place of business in Tucson, Arizona.

7. Defendants Daniel Horton and Deanna Horton (collectively the "Hortons") own and/or operate both the Stella and Edee entities.

8. Defendants Stella LLC, Stella Inc., Edee, and the Hortons will collectively be referred to herein as "Defendants".

9. Plaintiff PoliNFT Media, Inc. ("Plaintiff" or "PoliNFT") is a Wyoming Corporation. Tim Bueler is the president and director of PoliNFT.

10. Plaintiff PoliNFT is informed and believes that Defendants Stella Inc. and the Hortons are alter egos of one another. Plaintiff PoliNFT is informed and believes that there is such a unity of

interest and ownership between Defendants Stella Inc. and the Hortons that their separate personalities do not in reality exist. It will be an inequitable result if the acts in question are treated as those of Defendant Stella Inc. alone. Plaintiff PoliNFT is informed and believes that there has been a commingling of funds and assets of Defendants Stella Inc. and the Hortons, that they have disregarded corporate formalities, and the use of one as a mere shell or conduit for the affairs of the other. Such information and belief are based on, among other things, documents, such as accounting records, and communications with the former President of Stella Inc. who has explained that often Stella Inc. was undercapitalized, unable to pay vendors, although, distributions to the Hortons continued to be made. Plaintiff is informed and believes that the Hortons used money that should have been used to pay Stella Inc.'s vendors and third parties, such as PoliNFT, to fund the Horton's personal lifestyle and to purchase real property. The Hortons used Stella Inc. as their own personal instrumentality.

11. Plaintiff PoliNFT is informed and believes that the Doe Defendants are individuals and/or entities which, with actual knowledge of Defendants' conduct, provided substantial assistance in aiding and abetting Defendants in their wrongful conduct to deprive Plaintiff PoliNFT of the benefits of its partnerships and contracts, as well as additional revenue for the sale or use of its databases. Plaintiff PoliNFT intends to substitute the true names of the individuals and/or entities who aided and abetted Defendants in place of Does 1 through 20 once the identities of these individuals and/or entities are ascertained.

## **JURISDICTION**

12. The Superior Court of California for the County of Orange has jurisdiction to hear this case and venue is proper in this County because, *inter alia*, (1) the amount in controversy exceeds the jurisdictional minimum of this Court; (2) the contracts at issue between Plaintiff PoliNFT and Defendant Stella LLC were executed in Orange County because that is where Mr. Bueler lived when they were executed on behalf of PoliNFT; (3) Payments were to be made pursuant to the contracts at issue to PoliNFT which, at all relevant times, has maintained its principal place of business in Orange County; (4) the contracts at issue between Plaintiff PoliNFT and Defendant Stella LLC state that the agreements and resultant partnership will be governed under the laws of California; (5) Defendants

Daniel Horton and Deanna Horton reside in California; and (6) Plaintiff PoliNFT was harmed by Defendant Edee's and Defendant Stella Inc.'s wrongful conduct directed at PoliNFT operating within Orange County and the State of California.

## FACTUAL BACKGROUND

13. This case concerns the sale and use of data that Mr. Tim Bueler has been collecting for over fifteen years, with previous projects such as MinutemanProject.com, launched in 2004, and TeaParty.org, launched in 2009. Both of these projects produced long-term, high-value donor ecosystems, including the Tea Party donor network.

14. Thus, prior to working with Stella LLC, Mr. Bueler already had a fully developed donor and political data ecosystem built from his own properties, partnerships, and contracts.

15. Mr. Bueler, on behalf of his entity PoliNFT, entered into a partnership agreement with Defendant Stella LLC, whereby, with PoliNFT's database, Stella LLC would contract with a political marketing agency called Targeted Victory. Given that Mr. Dan Horton, who appeared to operate Stella LLC signed a contract on behalf of Stella LLC, Mr. Bueler reasonably relied on the fact that Stella LLC was an actual entity licensed to operate as an LLC. However, it has recently come to Mr. Bueler's attention that Stella LLC may not have ever been incorporated in any state.

16. Instead, Mr. Horton used Stella Inc. to contract with Targeted Victory and ultimately, with the use of PoliNFT's data, became one of Targeted Victory's top clients with respect to the licensing of donor data for major GOP fund raising. Data, such as that collected by Mr. Bueler, is highly valuable to agencies such as Targeted Victory because the use of such data allows for uniquely targeted marketing to known GOP donors.

17. PoliNFT licensed to Stella LLC access to all of the donor data that had been gathered to date, but Mr. Bueler, on behalf of PoliNFT, still continued to provide, negotiate, develop, or produce multiple data and acquisition deals, produced clicker (donor-prospect emails — potential donors used for acquisition and testing) data from Mr. Bueler's news network sites, as well as additional partnership projects and R&D initiatives (including the Targeted Victory Partnership with programs built off Mr. Bueler's data pipelines). Put differently, the donor database did not remain stagnant; it continued to grow through Mr. Bueler's efforts. Furthermore, any data that was harvested,

collected, or derived during the course of the partnership was the direct result of using PoliNFT's initial "seed" data. As such, PoliNFT's proprietary data encompasses not only the original list provided, but all derivative data generated during the partnership's operations ("Derivative Data").

18. On or about August 29, 2019, RetroMedia Inc. ("RetroMedia") and Defendant Stella LLC entered into an agreement and formed a partnership in which RetroMedia and Defendant Stella LLC would manage and market Targeted Victory content through email sending and recruiting marketing companies as vendors to assist in the marketing of Target Victory content. A true and correct copy of this agreement is attached hereto as **Exhibit A**. In this partnership, RetroMedia and Defendant Stella LLC have a 50% interest in the Partnership and in any rights, interest, or money (including, but not limited to, revenues and profits) derived from, related to, arising out of, or in connection with, any Targeted Victory content. All of RetroMedia's rights under the August 29, 2019 agreement have been assigned to PoliNFT.

19. On or about June 2, 2022, Plaintiff PoliNFT and Defendant Stella LLC entered into an agreement and formed a partnership in which they would manage and market Targeted Victory content through email, and any other marketing form, as well as any and all other third parties content, sending and recruiting marketing companies as vendors to assist in the marketing of Targeted Victory content. A true and correct copy of this agreement is attached hereto as **Exhibit B**. In this partnership, Plaintiff PoliNFT and Defendant Stella LLC each have a 50% interest in the Partnership and in any rights, interest, or money (including, but not limited to, revenues and profits) derived from, related to, arising out of, or in connection with, any Targeted Victory content.

20. In these partnerships, remaining revenue after mutually agreed upon expenses was to be distributed 50% to Plaintiff PoliNFT and 50% to Defendant Stella LLC. The only mutually agreed-upon expenses provided for in the partnership terms included two separate 10% commissions to third parties, for a total of 20%. Thus, as written, from all revenue that Stella LLC was to generate from Targeted Victory, 20% was to be paid to third parties, and the remaining balance was supposed to be split 50% and 50% between PoliNFT and Stella LLC. The written terms also provided that each party will pay for its own costs and expenses incurred to run their own business operations.

21. However, it was made clear to PoliNFT in early 2025 (based on information shared

by the former president of Stella Inc.), that due to creative accounting, PoliNFT has only been paid a fraction of the money that it was entitled to be paid under the express terms of the written agreement with Stella LLC. And, more recently, it has come to PoliNFT's attention (based on information shared by the former president of Stella, Inc.), that it is Stella Inc., not Stella LLC, that has been using PoliNFT's data and generating income from Targeted Victory.

22. With respect to the accounting, files generated for February 2022 indicate that the total revenue from five Targeted Victory programs was $1,081,260.82. From this number, 10% had already been paid as a commission because that commission was due to Targeted Victory, which had already taken its portion prior to sending the balance to Stella Inc. Thus, only 10% of the $1,081,260.82, which equates to $108,126 was to be deducted from the total, and the rest split 50/50%, meaning that PoliNFT (referred to in the records as "Tea Party") was entitled to $486,567.

23. Instead, PoliNFT was paid only about $127,000. Based on the analysis in the accounting, the Hortons instructed the accounting staff to use a fraudulent method of accounting, resulting in a far lower number due to PoliNFT. PoliNFT is informed and believes, based on information provided by Stella Inc.'s former president, that the Hortons withheld the governing contracts from the accounting staff so that the accounting staff did not know it was shorting PoliNFT millions of dollars in contractually due payments. A true and correct copy of this February 2022 accounting is attached hereto as **Exhibit C.**

24. When Mr. Bueler would question why the revenues are less than he would have otherwise anticipated, Daniel Horton misrepresented that the revenues from Targeted Victory were far less than the actual revenues. Moreover, although PoliNFT was entitled to the accounting reflecting Targeted Victory revenues, Mr. Horton refused to provide any accounting reflecting the true and accurate revenues generated from Targeted Victory.

25. The Hortons knew that the calculations that formed the basis of the payments to PoliNFT were fraudulent. For example, in a March 3, 2022 email, Ms. Sanda Henriques of Targeted Victory sent a list of payments that Targeted Victory had made to Stella Inc. A true and correct copy of this email is attached hereto as **Exhibit D**. The list in Ms. Henriques's email indicated that Targeted Victory's preliminary records for the February 2022 period showed gross revenue of

$1,077,902.00. Records now in Plaintiff PoliNFT's possession for that same period show gross revenue of $1,081.260.82, however this difference (of only about $4,000) would be corrected when Defendant Stella' Inc.'s accountants did the final reconciliation. This email originating from Ms. Henriques was then forwarded by Brian Chatwin to Rachel Dordeski, Defendant Daniel Horton, and Tim Shields. This email reveals that Daniel Horton was aware of the projects' actual revenue generated, despite designating Plaintiff PoliNFT's share of the profits for that month as only about $127,000. Mr. Daniel Horton responded to this email stating "Good Job", meaning he reviewed the contents of the email.

26. On information and belief, and based on a review of dozens of accounting records from 2021 to 2023 supplied by the former president of Stella Inc., these fraudulent calculations were repeated for each program from each month for the period from 2021-2023.

27. On information and belief, based on a review of dozens of accounting records from 2021 to 2023, Defendants Stella LLC, Stella Inc. and the Hortons defrauded Plaintiff PoliNFT out of millions of dollars, in an amount to be proven at trial.

28. On information and belief, and based on discussions with the former president of Stella Inc., the Hortons would cause Stella to distribute funds received from Targeted Victory, including sums that were due to PoliNFT, to fund their lavish lifestyles, the purchase of multi-million-dollar properties, and various other luxury goods.

29. On information and belief, based on discussions with the former president of Stella Inc. and who also was a former manager of Edee, Defendants Stella Inc. (and to the extent it even exists, Stella LLC), and the Hortons shared Plaintiff PoliNFT's databases (including all Derivative Data gathered during the partnership) with Defendant Edee and Defendant Edee used that data to generate revenue with targeted political marketing, without any express permission from Plaintiff PoliNFT or Tim Bueler.

30. As a result of Defendants' wrongful conduct, Plaintiff PoliNFT has been deprived of the benefits of its partnerships and contracts, as well as additional revenue for the use of its databases.

///

///

## FIRST CAUSE OF ACTION

**Breach of Contract**

**(By Plaintiff PoliNFT Against Defendants Stella LLC and Does 1–20)**

31. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

32. Plaintiff PoliNFT and Defendant Stella LLC entered into a written contract agreeing that they would manage and market Targeted Victory content through email, and any other marketing form, as well as any and all other third parties content, sending and recruiting marketing companies as vendors to assist in the marketing of Targeted Victory content. Additionally, all of RetroMedia's rights under a written contract between RetroMedia and Defendant Stella LLC, agreeing that they would manage and market Targeted Victory content through email sending and recruiting marketing companies as vendors to assist in the marketing of Target Victory content, have been assigned to Plaintiff PoliNFT.

33. Under these contracts, remaining revenue from the projects after the two mutually agreed upon expenses was to be distributed 50% to Plaintiff PoliNFT and 50% to Defendant Stella LLC.

34. Defendant Stella LLC breached the terms of the contract because they failed to pay Plaintiff PoliNFT 50% of the remaining project revenue after the two mutually agreed upon expenses. Instead, Plaintiff PoliNFT was paid only a fraction of the amount that it was entitled to be paid under the contract with Stella LLC

35. Plaintiff PoliNFT was harmed by Defendants Stella LLC's breach because Plaintiff PoliNFT did not receive the full 50% of the remaining project revenue after the two mutually agreed upon expenses and instead only received a fraction of the amount that it was entitled to be paid under the contract.

36. As a direct and proximate result of Defendant Stella LLC, Plaintiff PoliNFT was harmed and is thus entitled to damages in an amount to be proven at the time of trial.

///

///

///

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(By Plaintiff PoliNFT Against Defendants Stella LLC, Daniel Horton, Deanna Horton, and Does 1–20)**

37. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

38. Plaintiff PoliNFT and Defendant Stella LLC formed a partnership for the purpose of managing and marketing Targeted Victory content through email, and any other marketing form, as well as any and all other third parties content, sending and recruiting marketing companies as vendors to assist in the marketing of Targeted Victory content.

39. As partners, Defendant Stella LLC owed a duty of loyalty to Plaintiff PoliNFT, requiring it to act with the utmost good faith in the best interests of their partner Plaintiff PoliNFT.

40. Defendant Daniel Horton and Defendant Stella LLC knowingly acted against Plaintiff PoliNFT's interests in connection with their partnership by falsely reporting the partnership's accounting and profits and underpaying Plaintiff PoliNFT.

41. Plaintiff PoliNFT did not give informed consent to Defendant Daniel Horton or Defendant Stella LLC's conduct in its inaccurate accounting and underpaying Plaintiff PoliNFT.

42. Defendants Stella LLC and the Hortons also knowingly acted against Plaintiff PoliNFT's interests in connection with their partnership by sharing Plaintiff PoliNFT's databases with Defendants Edee and Stella Inc.

43. Plaintiff PoliNFT did not give informed consent to Defendants Stella LLC or the Hortons for their conduct in sharing Plaintiff PoliNFT's databases with Defendant Edee.

44. Plaintiff PoliNFT did not give informed consent to Defendants Stella LLC or the Hortons for their conduct in sharing Plaintiff PoliNFT's databases with Defendant Stella Inc.

45. By falsely reporting the partnership's accounting and profits and underpaying Plaintiff PoliNFT and by sharing Plaintiff PoliNFT's databases with Defendants Edee and Stella Inc. without Plaintiff PoliNFT's consent, Defendants Stella LLC and the Hortons breached their fiduciary duty to Plaintiff PoliNFT.

46. As a direct and proximate result of Defendants Stella LLC and the Hortons' conduct,

Plaintiff PoliNFT was harmed and thus entitled to damages in an amount to be proven at the time of trial.

47. The intentional actions of Defendants Stella LLC and the Hortons as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Stella LLC and the Hortons knew that they did not have the right to misreport and withhold portions of Plaintiff PoliNFT's share of the projects' profits or to share Plaintiff PoliNFT's databases with others. Or, at a bare minimum, Defendants Stella LLC and the Hortons were willfully blind, acting with a conscious disregard to Plaintiff PoliNFT's rights, refusing to follow the terms of the partnership. At all relevant times, Defendants Stella LLC and the Hortons acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

## THIRD CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (By Plaintiff PoliNFT Against Defendants Edee, Stella Inc., and Does 1–20)

48. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

49. Defendants Edee and Stella Inc. knew that Defendant Stella LLC, through the conduct of Defendants Daniel Horton and Deanna Horton, was going to breach its fiduciary duty owed to Plaintiff PoliNFT by sharing Plaintiff PoliNFT's databases with Defendants Edee and/or Stella Inc.

50. Defendant Stella LLC, through the conduct of Defendants Daniel Horton and Deanna Horton, did in fact breach its fiduciary duty owed to Plaintiff PoliNFT by sharing Plaintiff PoliNFT's databases with Defendants Edee and Stella Inc.

51. Defendants Edee and Stella Inc. both gave substantial assistance or encouragement to Defendants Stella and the Hortons by receiving and using Plaintiff PoliNFT's databases. Defendants Edee and Stella Inc. used that data to generate revenue with targeted political marketing. By receiving and using Plaintiff PoliNFT's databases, Defendant Edee and Stella Inc. acted with the intent of facilitating the commission of Defendant Stella LLC's breach of fiduciary duty.

52. As a direct and proximate result of Defendant Edee's and Stella Inc.'s conduct in

assisting Defendants Stella LLC and the Hortons' breach, Plaintiff PoliNFT was harmed and is thus entitled to damages in an amount to be proven at the time of trial.

53. The intentional actions of Defendants Edee and Stella Inc. as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Edee and Stella Inc. knew that they did not have the right to acquire and use Plaintiff PoliNFT's databases. At all relevant times, Defendants Edee and Stella Inc. acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

## **FOURTH CAUSE OF ACTION**

### **Fraud (Intentional Misrepresentation)**

### **(By Plaintiff PoliNFT Against Defendants Stella LLC, Stella Inc., Daniel Horton, Deanna Horton, and Does 1–20)**

54. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

55. For the period of at least 2021 through 2023, Defendants Stella LLC, Stella Inc. and the Hortons' repeatedly and continuously misrepresented to Plaintiff PoliNFT the total revenue derived from the Targeted Victory programs and the amounts Plaintiff PoliNFT was entitled to be paid under the express terms of the written agreement. Defendants Stella LLC, Stella Inc. and the Hortons made representations to Plaintiff PoliNFT about these amounts of revenue derived from the Targeted Victory projects and Plaintiff PoliNFT's share of the profits based on fraudulent methods of accounting, resulting in a far lower number due to Plaintiff PoliNFT.

56. Defendants Stella LLC, Stella Inc. and the Hortons' representations regarding the total revenue derived from the Targeted Victory programs and the amounts due to Plaintiff PoliNFT were false because they reported that the revenue derived from the Targeted Victory programs was less than the projects' actual revenue and calculated Plaintiff PoliNFT's share of the profits based on fraudulent methods of accounting, resulting in a far lower number due to Plaintiff PoliNFT.

57. Defendants Stella LLC, Stella Inc., and the Hortons' knew that the representations regarding the total revenue derived from the Targeted Victory programs and the amounts due to Plaintiff PoliNFT were false when they were made because they were aware of the projects' actual

revenue and were responsible for the accounting that resulted in the lower amounts reported to Plaintiff PoliNFT.

58. Defendants Stella LLC, Stella Inc., and the Hortons intended that Plaintiff PoliNFT rely on the representations. Plaintiff PoliNFT reasonably relied on Defendants Stella LLC, Stella Inc. and the Hortons' representations. Defendants Stella LLC and the Hortons had both contractual and fiduciary duties to accurately account for and report the Targeted Victory programs' profits and the amounts due to Plaintiff PoliNFT. Further, it was Defendant Stella LLC's exclusive duty to account for all income and expenses resulting from or related to Targeted Victory content under the agreements between the parties.

59. As a direct and proximate result of these misrepresentations and reliance, Plaintiff PoliNFT was harmed and is thus entitled to an award of compensatory damages in an amount to be proven at the time of trial.

60. The intentional actions of Defendants Stella LLC, Stella Inc. and the Hortons as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Stella LLC, Stella Inc., and the Hortons knew that they did not have the right to misreport Plaintiff PoliNFT's share of the projects' profits. Or, at a bare minimum, Defendants Stella LLC and the Hortons were willfully blind, acting with a conscious disregard to Plaintiff PoliNFT's rights, refusing to accurately report the projects' profits and Plaintiff PoliNFT's portion. At all relevant times, Defendants Stella LLC, Stella Inc., and the Hortons acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

**FIFTH CAUSE OF ACTION**

**Violation of Penal Code § 496**

**(By Plaintiff PoliNFT Against all Defendants and Does 1–20)**

61. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

62. Defendants Stella LLC, Stella Inc., and the Hortons' withheld profits from Plaintiff PoliNFT by falsely underreporting the Targeted Victory projects' profits and the amounts due to

Plaintiff PoliNFT and underpaying Plaintiff PoliNFT. By underpaying Plaintiff PoliNFT and retaining the remaining profits that were rightfully Plaintiff PoliNFT's, Defendants Stella LLC, Stella Inc., and the Hortons' concealed and withheld from it sums to which they knew they were not legally entitled.

63. Defendants Stella LLC, Stella Inc., and the Hortons' knew that they were not legally entitled to those sums at the time they concealed and withheld the sums from Plaintiff PoliNFT, the rightful owner, because they knew that the amounts reported as being due to PolifNFT were underreported, resulting in more money for Defendants. The Defendants did not have a good faith belief that the profits reported, distributed, and retained were valid or that they were legally entitled to the full sums of profits retained because there were discrepancies between the accounting maintained by Defendant Stella LLC, Stella Inc., and that reported to Plaintiff PoliNFT, resulting in gross underpayments to Plaintiff PoliNFT.

64. The intentional actions of Defendants constitute the taking, concealment, and withholding of stolen property within the meaning of Penal Code section 496, as the sums withheld from Plaintiff PoliNFT are property rightfully belonging to Plaintiff PoliNFT. Therefore, Plaintiff PoliNFT is entitled to recover treble damages, as well as reasonable attorneys' fees.

65. The intentional actions of Defendants Stella LLC, Stella Inc., and the Hortons as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants knew that they did not have the right to withhold portions of Plaintiff PoliNFT's share of the projects' profits. Or, at a bare minimum, Defendants Stella LLC, Stella Inc., and the Hortons were willfully blind, acting with a conscious disregard for Plaintiff PoliNFT's rights, refusing to follow the terms of the partnership agreement between PoliNFT and Stella LLC. At all relevant times, Defendants acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

///

///

///

**<u>SIXTH CAUSE OF ACTION</u>**

**Misappropriation of Trade Secrets**

**(By Plaintiff PoliNFT Against Defendants Edee, Stella Inc., and Does 1–20)**

66. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

67. Plaintiff PoliNFT owned and licensed donor data that Mr. Timothy Bueler had been gathering for over fifteen years. The information compiled and licensed in Plaintiff PoliNFT's databases was a confidential trade secret data collected and created by Mr. Bueler. This trade secret information includes not only the initial data provided by PoliNFT, but also all data subsequently harvested, gathered, or derived through the use of that initial data during the partnership. But for the use of PoliNFT's seed data, this Derivative Data would not have been acquired. The data was highly valuable because the information was not known to others. Plaintiff PoliNFT and Mr. Bueler made reasonable efforts to maintain information's secrecy and exclusivity by limiting others' access to the databases and providing others with access and use of the information by license. The information in the databases thus constitutes trade secret information.

68. Defendants Edee and Stella Inc. misappropriated Plaintiff PoliNFT's trade secret information by acquiring and using information from the database without express permission. At the time Defendants Edee and Stella Inc. accessed and used the information, Defendants Edee and Stella Inc. knew or had reason to know that they used improper means to acquire database information, including inducing a breach of duty to maintain secrecy over licensed data.

69. Defendants Edee and Stella Inc. also misappropriated Plaintiff PoliNFT's trade secret information by using the database information to generate revenue with targeted political marketing. At the time of their use, Defendants Edee and Stella Inc. knew or had reason to know that their knowledge of Plaintiff PoliNFT's trade secret information came from or through Defendants Stella LLC and/or the Hortons, and that Defendants Stella LLC and/or the Hortons had a duty to Plaintiff PoliNFT to limit use of the database information.

70. As a result of Defendants Edee's and Stella Inc.'s acquisition and use of Plaintiff PoliNFT's database information, Defendants Edee and Stella Inc. were unjustly enriched.

71. As a direct and proximate result of Defendant Edee's and Stella Inc.'s conduct,

Plaintiff PoliNFT was harmed and is thus entitled to damages in an amount to be proven at the time of trial.

72. The intentional actions of Defendant Stella Inc. and Edee as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Stella Inc. and Edee knew that they did not have the right to acquire and use Plaintiff PoliNFT's databases. At all relevant times, Defendants Stella Inc. and Edee acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

**SEVENTH CAUSE OF ACTION**

**Conspiracy to Misappropriate Trade Secrets**

**(By Plaintiff PoliNFT Against all Defendants and Does 1–20)**

73. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

74. Defendants Stella LLC and the Hortons were aware that Defendants Edee and Stella Inc. planned to misappropriate Plaintiff PoliNFT's trade secret information by acquiring and using information from the database without express permission.

75. The Defendants all agreed and intended for Defendants Edee and Stella Inc. to misappropriate Plaintiff PoliNFT's trade secret information by acquiring and using information from the database without express permission. All Defendants acted in concert in connection with Edee's and Stella Inc.'s misappropriation of Plaintiff PoliNFT's trade secret information.

76. With Defendants Stella LLC and the Hortons' cooperation, Defendants Edee and Stella Inc. misappropriated Plaintiff PoliNFT's trade secret information by acquiring and using Plaintiff PoliNFT's database information.

77. As a direct and proximate result of Defendants Stella Inc.'s, Stella LLC's, Edee's and the Hortons' conduct, Plaintiff PoliNFT was harmed and is thus entitled to damages.

78. The intentional actions of Defendants as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants knew that Stella LLC and the Hortons' did not have the right to share Plaintiff PoliNFT's databases and that Defendants Edee and Stella Inc. did

not have the right to acquire and use Plaintiff PoliNFT's databases. At all relevant times, Defendants acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

**EIGHTH CAUSE OF ACTION**

**Aiding and Abetting Misappropriation of Trade Secrets**

**(By Plaintiff PoliNFT Against Defendants Stella LLC, Daniel Horton, Deanna Horton and Does 1–20)**

79. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

80. Defendants Stella LLC and the Hortons knew that Defendants Edee and Stella Inc. was going to misappropriate Plaintiff PoliNFT's trade secret information by acquiring and using information from the database without express permission.

81. Defendants Stella LLC and the Hortons substantially assisted and encouraged Defendants Edee's and Stella Inc.'s misappropriation of Plaintiff PoliNFT's trade secret information by sharing Plaintiff PoliNFT's trade secret information with Defendants Edee and Stella Inc. without Plaintiff PoliNFT's express permission.

82. With Defendants Stella LLC's and the Hortons' assistance, Defendants Edee and Stella Inc. did in fact misappropriate Plaintiff PoliNFT's trade secret information by acquiring and using Plaintiff PoliNFT's database information.

83. As a direct and proximate result of Defendants Stella LLC's and the Hortons' conduct in assisting Defendant Edee's and Stella Inc.'s misappropriation, Plaintiff PoliNFT was harmed and is thus entitled to damages.

84. The intentional actions of Defendants Stella LLC and the Hortons' as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Stella LLC and the Hortons' knew that they did not have the right to share Plaintiff PoliNFT's databases and that Defendant Edee did not have the right to acquire and use Plaintiff PoliNFT's databases. At all relevant times, Defendants Stella LLC and the Hortons' acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to

harm.

**NINTH CAUSE OF ACTION**

**Conversion**

**(By Plaintiff PoliNFT Against Defendants Stella LLC, Stella Inc., Daniel Horton, Deanna Horton, and Does 1–20)**

85. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs.

86. At all relevant times, Plaintiff PoliNFT had the right to possess the full amounts that it was entitled to be paid under the express terms of the written agreement.

87. Defendants Stella LLC, Stella Inc., and the Hortons substantially interfered with Plaintiff PoliNFT's property rights by knowingly and intentionally taking portions of the amounts to which Plaintiff PoliNFT was entitled and applying those sums to their own use, such as through the Hortons causing Stella Inc. to distribute to the Hortons funds received from Targeted Victory, including sums that were due to Plaintiff PoliNFT under the terms of the partnership agreement, for their own personal uses.

88. Plaintiff PoliNFT did not agree to Defendants Stella LLC, Stella Inc. and/or the Hortons' taking portions of the amounts due to Plaintiff PoliNFT for their own uses.

89. As a direct and proximate result of Defendants Stella LLC, Stella Inc. and the Hortons' conduct, Plaintiff PoliNFT was harmed and is thus entitled to damages.

90. The intentional actions of Defendants Stella LLC, Stella Inc. and the Hortons as alleged herein constitute acts of oppression, fraud, and/or malice. Plaintiff PoliNFT, therefore, is entitled to recover punitive damages in addition to its actual damages. At all relevant times, Defendants Stella LLC, Stella Inc., and the Hortons knew that they did not have the right to take portions of the amounts to which Plaintiff PoliNFT was entitled and to apply those sums to their own use. At all relevant times, Defendants Stella LLC, Stella Inc., and the Hortons acted with the intent of depriving Plaintiff PoliNFT of its rights and causing injury to it. Such conduct was despicable and subjected Plaintiff PoliNFT to harm.

///

///

**TENTH CAUSE OF ACTION**

**Common Count: Money Had and Received**

**(By Plaintiff PoliNFT Against Defendants Daniel Horton, Deanna Horton, and Does 1–20)**

91. Plaintiff PoliNFT realleges and reincorporates by reference all preceding paragraphs, except for those that expressly allege tortious conduct. This Cause of Action is being brought in the alternative to any tortious conduct alleged against the Hortons.

92. Defendants Daniel Horton and Deanna Horton received money from the Targeted Victory projects that was intended to be distributed to Plaintiff PoliNFT.

93. This money that Defendants Daniel Horton and Deanna Horton received was not distributed to Plaintiff PoliNFT, and Defendants Daniel Horton and Deanna Horton have still not given the money to Plaintiff PoliNFT.

94. As a direct and proximate result of Defendants Daniel Horton and Deanna Horton's conduct, Plaintiff PoliNFT was harmed and is thus entitled to compensatory damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For all damages, including compensatory and consequential damages, according to proof,
2. For restitution;
3. For unjust enrichment and disgorgement;
4. For treble damages under Penal Code § 496;
5. For punitive damages pursuant to Civil Code § 3294;
6. For costs of suit;
7. For reasonable attorneys' fees;
8. For prejudgment interest at the legal rate;
9. For injunctive relief, enjoining Defendants Edee and Stella Inc. from:
   a. Acquiring Plaintiff PoliNFT's trade secret information from the database without express permission from Plaintiff PoliNFT.

b. Using Plaintiff PoliNFT's trade secret information to generate revenue with targeted political marketing without express permission from Plaintiff PoliNFT.

10. For such other relief as recoverable by law; and

11. Such other relief as ordered by the Court.

Dated: December 15, 2025 FOLEY BEZEK BEHLE & CURTIS, LLP

By: ______________________
KEVIN D. GAMARNIK
Attorneys for Plaintiff PoliNFT

**REQUEST FOR JURY TRIAL**

Plaintiff requests jury trial for all jury triable issues.

Dated: December 15, 2025 FOLEY BEZEK BEHLE & CURTIS, LLP

By: ______________________
KEVIN D. GAMARNIK
Attorneys for Plaintiff PoliNFT

# EXHIBIT A

# PARTNERSHIP AGREEMENT

Target Victory Partnership

This Partnership Agreement (the "Agreement") is made and entered into this August 29, 2019 (the "Effective Date"). The Parties to this Agreement are Stella Management LLC (herein referenced as "Stella") and RetroMedia Inc. (herein referenced as RetroMedia). Stella and RetroMedia are each a Partner under this Agreement. Stella and RetroMedia may be referred to collectively as the "Partners" or "Parties".

In consideration of the mutual promises, agreements, and conditions stated herein, the Parties to this Agreement agree to the following:

1. PURPOSE:

Whereas, there is a contract dated August 29, 2019 between Stella and TV regarding the managing and marketing of TV content (the "TV Contract"). The primary purpose of this Agreement is to create a Partnership between RetroMedia and Stella, whereby RetroMedia and Stella will manage and market Target Victory (herein referenced as TV) content through email sending and recruiting marketing companies as vendors to assist in the marketing of TV content. The Parties' primary place of operation will be 6890 E. Sunrise Dr. Ste. 120-137, Tucson, Arizona, 85750. This Agreement and resultant Partnership will be governed under the laws of the state of California.

2. DUTIES:

The Parties will have the following duties under this Agreement:

a. Stella shall contribute as email service provider, also known as "ESP", for the purpose of sending emails and accounting of all income and expenses resulting from or related to Target Victory content, including but not limited to, accounting and payment of income earned by each Party under this Agreement, and accounting and payment for any vendors per Section 5 of this Agreement.
b. As the sole party under the TV Contract, Stella is solely responsible for its obligations under the TV Contract.
c. RetroMedia Inc. shall license the use of RetroMedia owned databases for the limited purpose of marketing TV content under this Agreement, subject to the terms of the separate licensing agreement between the Parties. The use or license of RetroMedia owned databases under this Agreement is limited, revocable, and nontransferable. Nothing in this Agreement shall in anyway change or limit RetroMedia's rights and interest in the RetroMedia owned databases. RetroMedia shall continue to retain all ownership, rights, and interest to all databases used to market Target Victory content. In the event of withdrawal from or termination of this Agreement by either Party, the limited license under this Agreement shall terminate, and Stella shall not use in any manner the RetroMedia owned databases.
d. RetroMedia will recruit vendors to market TV content.

3. INTEREST AND AUTHORITY:

Any decisions related to, arising out of, or in connection with the management or marketing of TV content under this Agreement shall require the unanimous consent by all Parties.

Each Partner under this Agreement shall have the following ownership interest in the Partnership:

- Stella: 50%
- RetroMedia: 50%

The Parties' ownership interest in any rights, interest, or money (including, but not limited to, revenues and profits) derived from, related to, arising out of, or in connection with, any TV content shall be as follows:

- Stella Management Inc.: 50%
- RetroMedia Inc: 50%

4. COSTS:
The Parties will pay and be responsible for their own costs arising from the execution of their respective duties under this Agreement.

5. PROFITS:
Per the TV Contract, certain income and/or gross revenue is to be derived from TV relating to the managing and marketing of TV content. Any income and/or gross revenue derived relating to the managing and marketing of **TV content (collectively "Revenue") shall be distributed as f**ollows:

a. Remaining Revenue after mutually agreed upon expenses shall be distributed:
50% to RetroMedia and 50% to Stella.
b. Stella and RetroMedia do herein mutually agree upon expenses as under this Section 5 as follows:
**TV 10% and Brian Chatwin 10%**
c. Stella shall perform any accounting or calculation required under this Section 5, and RetroMedia shall have the right to inspect such books or accounting at any time and challenge any accounting or calculation as necessary. Stella shall distribute any Revenue distribution under this Section on the 1st day of each month by electronic transfer or bank wire.

6. ACCOUNTING:
All accounts related to this Agreement or TV content, including contribution and distribution accounts will be audited upon the request of either Party. All Parties will maintain an individual distribution account. Parties will keep accurate and complete books of account for all accounts related to the Agreement. Any Partner will be allowed to review any books of account at any time upon its request.

Additional accounting criteria:

a. each Party will be responsible for its own taxes related to any distributions received under this Agreement or the TV Contract.
b. accounting records will be kept on a cash basis.
c. the fiscal year will be complete on the last day of December of each year.
d. Stella will be able to sign checks and to make electronic and bank transfers.

7. WITHDRAWAL/TERMINATION:
The Parties may withdraw from or terminate this Agreement at any time. Should a Party withdraw from this Agreement because of choice or death, the remaining Partner will have the option to buy out the remaining shares of the Partnership. The Partners agree to hire an outside firm to assess the value of the remaining shares. Only upon the partners' unanimous agreement will the outside firm's valuation of the shares be considered final. The remaining Partner will have 90 days to decide if it wants to buy the remaining shares. Should all Partners agree by unanimous vote, the Partnership may choose to allow a non-Partner to buy the shares thereby replacing the previous Partner. If no Partner(s) finalizes a purchase agreement by 90 days, the Partnership will be dissolved. Should the Partnership dissolve, the accounts maintained under this Agreement shall be liquidated, and the outstanding debts under this Agreement will be paid. All remaining funds after debts have been paid will be distributed based on the percentage of ownership interest outlined in this Agreement.

8. AMENDMENTS:
Amendments to this Agreement may be made only upon the unanimous and written consent of all Parties.

a. Amendments must be expressly written and have the original signatures of all Parties.
b. All amendments, notices, requests, claims, demands and other communications between the Parties shall be in writing. All such written communications shall be given (i) by delivery in person, (ii) by a nationally recognized next day courier service, (iii) by first class, registered or certified mail, postage prepaid, (iv)

by facsimile or (v) by electronic mail to the addresses of the Parties specified in this Agreement or such other addresses specified in writing. All notices shall be effective upon (i) receipt by the Party to which the written communication is given, or (ii) on the 5th day following mailing, whichever occurs first.

9. DISPUTE RESOLUTION:

The Parties will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations amongst the Parties. If the matter is not resolved by negotiation, the Parties will resolve the dispute using Alternative Dispute Resolution (ADR) procedure. Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation in the state of California. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration under the rules of the American Arbitration Association effective at the time. The arbitrator's award will be final, and judgment may be entered upon it by any court having competent jurisdiction within the state of California.

Any notice, report, or other communication required hereunder shall be sent to the Parties at the email addresses set forth below:

In Witness whereof, the Agreement has been executed by the duly authorized representatives of the Parties hereto the day and year written below, intending to be legally bound hereby.

Any notice, report, or other communication required hereunder shall be sent to the Parties at the email addresses set forth below:

**In Witness whereof**, the Agreement has been executed by the duly authorized representatives of the Parties hereto the day and year written below, intending to be legally bound hereby.

**RetroMedia, Inc.**

**Stephen Eichler J.D.**
Title: President & CEO

Signature: Steve Eichler

Date: 08/29/2019

Email Address: **RetroMediaInternational@gmail.com**

**Stella Management, LLC**

**Daniel Horton**
Title: President & Owner

Signature: DocuSigned by: Dan Horton 41BC4AD8EAF14D8...

Date: 8/29/2019

Email Address: dhorton@dmsgs.com

# EXHIBIT B

# JJP AGREEMENT

Target Victory Partnership & All and Any Third party Contracts

This Partnership Agreement (the "Agreement") is made and entered into this **June 2,** 2022 (the "Effective **Date"). The Parties to this Agreement are Stella Management LLC (herein referenced as "Stella") and PoliNFT Media** (herein referenced as **"PNM").** Stella and **PNM** are each a Partner under this Agreement. Stella **and PNM may be referred to collectively as the "Partners" or "Parties".** In consideration of the mutual promises, agreements, and conditions stated herein, the Parties to this Agreement agree to the following:

1. PURPOSE:

Whereas, **Any and All contracts** between Stella and TV regarding the managing and marketing **of TV content and or data (the "TV Contract"). As well as, All and Any 3rd party contracts between Stella and any 3rd parties (existing today or entered into within the term of this contract) the "3rdP Contracts". The primary purpose of this Agreement is to create a Partnersh**ip between **PNM** and Stella, whereby **PNM** and Stella will manage and market Target Victory (herein referenced as TV) content through email**, and any other marketing form, as well as any and all other 3rd parties content (herein referenced as 3rdP),** sending and recruiting marketing companies as vendors to assist in the marketing of TV content. The Parties**' primary place of operation will be: 6890 E. Sunrise Dr. Ste. 120**-137, Tucson, Arizona, 85750. This Agreement and resultant Partnership will be governed under the laws of the state of California.

2. DUTIES:

The Parties will have the following duties under this Agreement:

a. **Stella shall contribute as email service provider, also known as "ESP", for the purpose of sending emails** and accounting of all income and expenses resulting from or related to Target Victory content **and any 3rdP**, including but not limited to, accounting and payment of income earned by each Party under this Agreement, and accounting and payment for any vendors per Section 5 of this Agreement.
b. As the sole party under the TV Contract, Stella is solely responsible for its obligations under the TV Contract. **As the possible sole party under 3rdP Contracts, Stella is responsible for its obligations under the 3rdP Contracts.**
c. **PNM** shall license the use of **PNM** owned databases for the limited purpose of marketing TV content under this Agreement, **as well as all 3rdP content,** subject to the terms of the separate licensing agreement between the Parties. The use or license of **PNM** owned databases under this Agreement is limited, revocable, **and nontransferable. Nothing in this Agreement shall in anyway change or limit PNM rights and** interest in the **PNM** owned databases. **PNM** shall continue to retain all ownership, rights, and interest to all databases used to market Target Victory conten**t, as well as all 3rdP content**. In the event of withdrawal from or termination of this Agreement by either Party, the limited license under this Agreement shall terminate, and Stella shall not use in any manner the **PNM** owned databases **or data claimed during the term of this contract.**
d. **PNM** will recruit vendors to market TV content**, as well as any 3rdP content.**

3. INTEREST AND AUTHORITY:

**Any decisions related to, arising out of, or in connection with the management or marketing of TV content or data, or any 3rdP content or data, under this Agreement shall require the unanimous consent by all Parties.**

**Each Partner under this Agreement shall have the following ownership interest in the Partnership:**

- Stella **Management LLC**: 50%
- **PoliNFT Media**: 50%

**The Parties' ownership interest in any rights, interest, or money (including, but not limited to, revenues and** profits) derived from, related to, arising out of, or in connection with, any TV content shall be as follows:

- **Stella Management LLC: 50%**
- **PoliNFT Media**: 50%



EXHIBIT B

4. COSTS:

The Parties will pay and be responsible for their own costs arising from the execution of their respective duties under this Agreement.

5. PROFITS:

Per the TV Contract, certain income and/or gross revenue is to be derived from TV relating to the managing and marketing of TV content. Any income and/or gross revenue derived relating to the managing and marketing of **TV content (collectively "Revenue") shall be distributed as** follows:

a. Remaining Revenue after mutually agreed upon expenses shall be distributed: 50% to **PNM** and 50% to Stella.
b. Stella and **PNM** do herein mutually agree upon expenses as under this Section 5 as follows: **TV 10% and Brian Chatwin 10%.**

c. Stella shall perform any accounting or calculation required under this Section 5, and **PNM** shall have the right to inspect such books or accounting at any time and challenge any accounting or calculation as necessary. Stella shall distribute any Revenue distribution under this Section on the 1st day of each month by electronic transfer or bank wire.

6. ACCOUNTING:

All accounts related to this Agreement or TV content, including contribution and distribution accounts will be audited upon the request of either Party. All Parties will maintain an individual distribution account. Parties will keep accurate and complete books of account for all accounts related to the Agreement. Any Partner will be allowed to review any books of account at any time upon its request. Additional accounting criteria:

a. each Party will be responsible for its own taxes related to any distributions received under this Agreement or the TV Contract.
b. accounting records will be kept on a cash basis.
c. the fiscal year will be complete on the last day of December of each year.
d. Stella will be able to sign checks and to make electronic and bank transfers.

7. WITHDRAWAL/TERMINATION:

The Parties may withdraw from or terminate this Agreement at any time. Should a Party withdraw from this Agreement because of choice or death, the remaining Partner will have the option to buy out the remaining shares of the Partnership. The Partners agree to hire an outside firm to assess the value of the remaining shares. Only upon the partners' unanimous agreement will the outside firm's valuation of the shares be considered final. The remaining Partner will have 90 days to decide if it wants to buy the remaining shares. Should all Partners agree by unanimous vote, the Partnership may choose to allow a non-Partner to buy the shares thereby replacing the previous Partner. If no Partner(s) finalizes a purchase agreement by 90 days, the Partnership will be dissolved. Should the Partnership dissolve, the accounts maintained under this Agreement shall be liquidated, and the outstanding debts under this Agreement will be paid. All remaining funds after debts have been paid will be distributed based on the percentage of ownership interest outlined in this Agreement.

8. AMENDMENTS:

Amendments to this Agreement may be made only upon the unanimous and written consent of all Parties.

a. Amendments must be expressly written and have the original signatures of all Parties.
b. All amendments, notices, requests, claims, demands and other communications between the Parties shall be in writing. All such written communications shall be given (i) by delivery in person, (ii) by a nationally recognized next day courier service, (iii) by first class, registered or certified mail, postage prepaid, (iv)

by facsimile or (v) by electronic mail to the addresses of the Parties specified in this Agreement or such other addresses specified in writing. All notices shall be effective upon (i) receipt by the Party to which the written communication is given, or (ii) on the 5th day following mailing, whichever occurs first.

9. DISPUTE RESOLUTION:

The Parties will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations amongst the Parties. If the matter is not resolved by negotiation, the Parties will resolve the dispute using Alternative Dispute Resolution (ADR) procedure. Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation in the state of California. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration under the rules of the American Arbitration Association effective at the time. The arbitrator's award will be final, and judgment may be entered upon it by any court having competent jurisdiction within the state of California.

Any notice, report, or other communication required hereunder shall be sent to the Parties at the email addresses set forth below:

In Witness whereof, the Agreement has been executed by the duly authorized representatives of the Parties hereto the day and year written below, intending to be legally bound hereby.

Any notice, report, or other communication required hereunder shall be sent to the Parties at the email addresses set forth below:

**In Witness whereof**, the Agreement has been executed by the duly authorized representatives of the Parties hereto the day and year written below, intending to be legally bound hereby.

**PoliNFT Media**

**Timothy Bueler**

Signature: Timothy Bueler

Date: 6/2/2022

Email Address: **polimedia@polimedia.org**

**Stella Management, LLC**

**Daniel Horton**

Title: President & Owner

Signature: DocuSigned by: Dan Horton 41BC4AD8EAF14D8...

Date: 6/9/2022

Email Address: dhorton@dmsgs.com

# EXHIBIT C

## FEBRUARY 2022 REVENUE SHARES:

| | | Tea Party Formula | Tea Party Spreadsheet |
|---|---|---|---|
| **Program 1: NRCC (Invoice Date 3/7/22):** | **381,796.60** | **190,898.30** | **190,898.30** |
| Targeted Victory commission (0%): | 0.00 | 0.00 | 0.00 |
| | 381,796.60 | 190,898.30 | 190,898.30 |
| 10% to Brian Chatwin: | 38,179.66 | 19,089.83 | 19,089.83 |
| COS | | 50,000.00 | 50,000.00 |
| | 343,616.94 | 121,808.47 | 121,808.47 |
| 50% to STELLA | 282,712.71 | 60,904.24 | 60,904.24 |
| 50% to Tea Party | 60,904.24 | 60,904.24 | 60,904.24 |
| 10% to Tim Shields (10% of STELLA portion) | 28,271.27 | | |
| 10% to Racheal Dordeski (10% of STELLA portion) | 28,271.27 | | |
| | | | |
| **Program 1: NRSC/USA-GOP/MISC TV (Invoice Date 3/7/22):** | **525,399.93** | **262,699.97** | **261,474.50** |
| Targeted Victory commission (0%): | 0.00 | 0.00 | 0.00 |
| | 525,399.93 | 262,699.97 | 261,474.50 |
| 10% to Brian Chatwin: | 52,539.99 | 26,270.00 | 26,147.45 |
| COS | | 100,000.00 | 100,000.00 |
| List Owners Share | | 1,102.90 | 0.00 |
| | 472,859.94 | 135,327.07 | 135,327.05 |
| 50% to STELLA | 405,196.40 | 67,663.53 | 67,663.53 |
| 50% to Tea Party | 67,663.53 | 67,663.53 | 67,663.53 |
| 10% to Tim Shields (10% of the Stella portion) | 40,519.64 | | |
| 10% to Racheal Dordeski (10% of the Stella portion) | 40,519.64 | | |
| | | | |
| **Program 2: INTERNAL Targeted Victory (Invoice Date 3/7/22):** | **170,509.48** | **(texting not included)** | |
| 10% to Brian Chatwin: | 17,050.95 | | |
| DMS Node Rental (COS) | 150,000.00 | | |
| | 3,458.53 | | |
| 100% to Stella (Amount billed less BC commission) | 153,458.53 | | |
| 10% to Tim Shields (10% of STELLA portion) | 15,345.85 | | |
| 10% to Racheal Dordeski (10% of STELLA portion) | 15,345.85 | | |
| | | | |
| **Program 2: INTERNAL Targeted Victory P2P (Invoice Date 3/22/22):** | **554.81** | | |
| DMS Node Rental (COS) | 0.00 | | |
| | 554.81 | | |

EXHIBIT C

| | |
|---|---|
| 10% to Brian Chatwin: | 55.48 |
| 100% to Stella (Amount billed less BC commission) | 499.33 |
| 10% to Tim Shields (10% of STELLA portion) | 49.93 |
| 10% to Racheal Dordeski (10% of STELLA portion) | 49.93 |

| | |
|---|---|
| **Program 2: Retire or Lose (Invoice Date 3/17):** | **3,000.00** |
| DMS Node Rental (COS) | 0.00 |
| | 3,000.00 |
| 10% to Brian Chatwin: | 300.00 |
| 100% to Stella | 2,700.00 |
| 10% to Tim Shields (10% of the Stella portion) | 270.00 |
| 10% to Racheal Dordeski (10% of the Stella portion) | 270.00 |

*Total revenues greater than or equal to $1M = 10% commission to BC/RD/TS*
*Total revenues less than or equal to $1M = 5% commission to BC/RD/TS*
*Tea Party formula is always based on BC commission of 10%*

| | | |
|---|---|---|
| | *Tea Party* | |
| | Feb-22 | |
| | **452,372.80** | |
| Total commission to BC: | 0.00 | Targeted Victory commission (0%) |
| 108,126.08 | 452,372.80 | |
| Total commission to TS: | 45,237.28 | 10% to Brian Chatwin |
| 84,456.70 | 150,000.00 | COS |
| Total commission to RD: | 257,135.52 | |
| 84,456.70 | 128,567.76 | 50% to STELLA |
| | 128,567.76 | 50% to Tea Party |

Total payment to Tea Party:
128,567.76

**Total netted to Stella after all payouts & COS:**
**844,566.97**

# EXHIBIT D

Re: Stella List Payout - February Inbox ×

Dan Horton - DMS <dhorton@dmsgs.com>
to Brian, Racheal, me

Thu, Mar 3, 2022, 9:19 AM

GREAT JOB!

**From:** "Brian Chatwin" <bchatwin@targetedvictory.com>
**To:** "Racheal Dordeski" <rdordeski@dmsgs.com>, "dhorton" <Dhorton@dmsgs.com>, "tims stellamgmt" <tims.stellamgmt@gmail.com>
**Sent:** Thursday, March 3, 2022 8:14:45 AM
**Subject:** Fwd: Stella List Payout - February

Nice work, everyone! Boom!

---------- Forwarded message ---------
From: **Sandra Henriques** <shenriques@targetedvictory.com>
Date: Thu, Mar 3, 2022 at 11:05 AM
Subject: Stella List Payout - February
To: Brian Chatwin <bchatwin@targetedvictory.com>

This is what we're looking at for Feb. The doc is attached as well.

| Email Rental | List name | Payout | |
|---|---|---|---|
| External | McCarthy USA GOP | $ | 119,064.67 |
| | NRCC USA GOP 110% | $ | 381,422.44 |
| | Penny Pug | $ | 304.00 |
| | PUG | $ | 47,623.50 |
| | RSLC USA GOP | $ | 108,244.53 |
| | RSLC USA GOP 2 | $ | 18,180.87 |
| | USA GOP110% | $ | 170,743.32 |
| | USA GOP XX | $ | 62,670.11 |

EXHIBIT D

# SUMMONS
# (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
STELLA MANAGEMENT, INC., a Michigan corporation; STELLA MANAGEMENT, INC., an Arizona corporation; STELLA MANAGEMENT, LLC (state of incorporation presently unknown); DANIEL HORTON, an individual; DEANNA HORTON, an individual; EDEE, INC., an Arizona corporation; and DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
POLINFT MEDIA, a Wyoming Corporation

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California, County of Orange | 700 Civic Center Drive West Santa Ana, CA 92701

CASE NUMBER:
30-2025-01533588-CU-BC-CJC
**Assigned for All Purposes**
Judge Deborah Servino

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kevin D. Gamarnik | FOLEY BEZEK BEHLE & CURTIS LLP, 15 West Carrillo Street, Santa Barbara, CA 93101, (714) 556-1700

DATE: *(Fecha)* 12/16/2025 DAVID H. YAMASAKI, Clerk of the Court Clerk, by *(Secretario)* A. Burton Athena Burton, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* STELLA MANAGEMENT, INC., a Michigan corporation

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

# PROOF OF SERVICE

**PoliNFT Media v Stella Management, Inc. et al.**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 19900 MacArthur Blvd., Suite 1150, Irvine, CA 92612-2445.

On January 23, 2026, I served true copies of the following document(s) described as **NOTICE OF REMOVAL- DIVERSITY JURISDICTION** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Walsworth LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Irvine, California.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I electronically served a copy of the documents described above from the email address dsandoval@walsworthlaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2026, at Irvine, California.

/s/Dalia Sandoval

Dalia Sandoval

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686

**SERVICE LIST**
**PoliNFT Media v Stella Management, Inc. et al.**

Attorneys for Plaintiff PoliNFT Media:

Kevin D. Gamarnik (SBN 273445)
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Tel: (714) 556-1700
Fax: (714) 546-5005
kgamarnik@foleybezek.com

WALSWORTH
19900 MACARTHUR BLVD., SUITE 1150
IRVINE, CALIFORNIA 92612-2445
TEL (714) 634-2522 • FAX (714) 634-0686